## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

CATHERINE A. S.,                          )
                                          )
      Plaintiff,                        )
                                          )
v.                                        )
                                          )          **Case No. 20-cv-00415-JFH-SH**
KILOLO KIJAKAZI, Acting                   )
Commissioner of Social Security,[1]       )
                                          )
      Defendant.                       )

## REPORT AND RECOMMENDATION

    This matter is before the undersigned United States Magistrate Judge for a report and recommendation.  Pursuant to 42 U.S.C. § 405(g), Plaintiff Catherine A. S. requests judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying her claim for supplemental security income benefits under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-1383f.  For the reasons explained below, the undersigned Magistrate Judge **RECOMMENDS** that the Commissioner's decision be **AFFIRMED**.

### I.    Disability Determination and Standard of Review

    Under the Act, an individual is disabled if she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  These impairment(s) must be "of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er]

---

[1] Effective July 9, 2021, pursuant to Fed. R. Civ. P. 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 1382c(a)(3)(B).

Social Security regulations implement a five-step sequential process to evaluate disability claims.  20 C.F.R. § 416.920.  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  Under the five-step process, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. pt. 404, subpt. P, app. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do her past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work.  20 C.F.R. § 416.920(a)(4)(i)-(v).  Generally, the claimant bears the burden of proof for the first four steps, assuming the impairment is not conclusively presumed to be disabling. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987).  At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy.  20 C.F.R. § 416.960(c)(2).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence.  *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).  The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  Substantial evidence is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to

determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue,* 511 F.3d 1270, 1272 (10th Cir. 2008).

## II.     Background and Procedural History

On April 10, 2018, Plaintiff applied for Title XVI benefits.  (R. 174-81.)  Plaintiff alleges that she has been unable to work since June 1, 2016, due to anxiety, posttraumatic stress disorder ("PTSD"), obsessive compulsive disorder ("OCD"), depression, a problem with her lower abdomen, fainting spells, dizziness, and diabetes.  (R. 174, 205.)  Plaintiff was 54 years old on the date of the ALJ's decision.  (R. 22, 174.)  She has a high school equivalent education and no past relevant work.  (R. 38, 46, 206.)

Plaintiff's claim for benefits was denied initially and on reconsideration, and she requested a hearing.  (R. 64-99, 113-14.)  ALJ B. D. Crutchfield conducted an administrative hearing and issued a decision on October 4, 2019, finding Plaintiff not disabled.  (R. 13-22, 28-51.)  The Appeals Council denied review on June 24, 2020 (R. 1-5), rendering the Commissioner's decision final.  20 C.F.R. § 416.1481.  Plaintiff timely filed this appeal on August 18, 2020.  (ECF No. 2.)

## III.    The ALJ's Decision

In her decision, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the application date of April 10, 2018.  (R. 15.)  At step two, the ALJ found Plaintiff had the severe impairments of status post colon cancer with residuals, asthma, unspecified syncope, OCD, PTSD, and unspecified anxiety disorder.  (R. 15-16.)  At step three, the ALJ found Plaintiff's impairments did not meet or equal a listed impairment.  (R. 16-17.)

The ALJ then determined Plaintiff had the RFC to perform a limited range of light work as defined in 20 C.F.R. § 416.967(b), with the following non-exertional limitations:

> She should not climb ladders, ropes, or scaffolds; occasionally balance and climb ramps and stairs; and would need to avoid hazards such as unprotected heights and moving machinery. She should avoid concentrated exposure to dust, fumes, odors, gases, and poor ventilation. The claimant can perform simple and routine tasks; relate to supervisors and peers, and the general public on an occasional basis; and can adapt to a work situation.

(R. 17.) The ALJ provided a detailed analysis of the evidence that went into this finding. (R. 18-21.)

At step four, the ALJ found Plaintiff had no past relevant work to analyze (R. 21), so she proceeded to step five. There, based on the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff could perform light, unskilled occupations existing in significant numbers in the national economy, including marker, routing clerk, and bagger/sorter. (R. 21-22.) The ALJ thus found Plaintiff was not disabled. (R. 22.)

## IV.    Issues

Plaintiff asserts the ALJ erred by: (1) failing to conduct a function-by-function assessment of her ability to maintain attention and concentration for extended periods (ECF No. 15 at 6-10), (2) failing to account for her moderate limitation in maintaining attention and concentration for extended periods (*id.* at 13-15), and (3) failing to consider all the evidence from her treating psychiatrists (*id.* at 10-13).[2]

## V.    Analysis

### A.    The ALJ's RFC Assessment Was Adequate.

Plaintiff contends that the ALJ violated Social Security Ruling ("SSR") 96-8p by failing to assess her ability to maintain attention and concentration for extended periods on a function-by-function basis in the RFC assessment. In relevant part, SSR 96-8p provides that "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an

---

[2] The undersigned has re-organized Plaintiff's arguments for clarity.

4

individual's ability to do work-related activities." SSR 96-8p, 1996 WL 374184, at *3 (July 2, 1996). The "function-by-function" assessment component of SSR 96-8p requires the ALJ to express the limiting effects of a claimant's mental impairments in terms of the "[w]ork-related mental activities generally required by competitive, remunerative work[,]" which "include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." *Id.* at *6. In order to perform the full range of work at a given exertional level, a claimant must be able to do substantially all of the exertional and nonexertional functions required by work at that level. *Id.* at *3. "Therefore, it is necessary to assess the [claimant's] capacity to perform each of these functions . . . ." *Id.* Without a function-by-function analysis, the concern at step 5 is that "an ALJ 'may . . . overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do.'" *Hendron v. Colvin,* 767 F.3d 951, 956 (10th Cir. 2014) (quoting SSR 96-8p at *4).

Plaintiff maintains that the ALJ's failure to separately discuss and make findings regarding her ability to maintain attention and concentration for extended periods as contemplated by SSR 96-8p is a *per se* error requiring remand.[3] However, the omission of an explicit function-by-function analysis from the RFC assessment is not reversible error if the ALJ thoroughly reviews the medical evidence and addresses the limitations supported by the record. *Id.* at 954, 956-57 (holding the ALJ's failure to perform an explicit function-by-function analysis of Plaintiff's ability to sit was not reversible error because the ALJ thoroughly reviewed the medical evidence and did not overlook a substantial limitation). In this case, the ALJ did not conduct a function-by-function

---

[3] While not mentioned in SSR 96-8p, the regulations provide that, when rating a degree of functional limitation from a mental impairment, the ALJ will consider functional areas that include "concentrate, persist, or maintain pace . . . ." 20 C.F.R. § 416.920a(c)(3).

analysis supporting her unskilled work determination, but she did properly consider the work restrictions necessary to accommodate Plaintiff's mental limitations as discussed below. Furthermore, Plaintiff does not indicate how the omission of a function-by-function analysis of her mental abilities affected the RFC.  "Rather, she complains that the RFC is not in the proper form," *id.* at 956, because it does not use the <u>words</u> "attention" or "concentration."  Plaintiff cites to no evidence that she cannot perform the requirements of unskilled work; therefore, "the ALJ's failure to find explicitly that [Plaintiff] was capable of [performing the mental activities required for unskilled work] was not critical to the outcome of this case, and [Plaintiff] has not demonstrated error." *Id.* at 957.  Because the ALJ thoroughly considered Plaintiff's medical records, the medical source opinion evidence, and Plaintiff's testimony in reaching the RFC determination, her decision is supported by substantial evidence.  *See Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal . . . .  [W]e cannot insist on technical perfection.").

### B.     The ALJ Accounted for Plaintiff's Moderate Limitation in Maintaining Attention and Concentration for Extended Periods.

Plaintiff contends that the ALJ failed to account for her moderate limitation in maintaining attention and concentration for extended periods, as identified by state agency psychologists Julian Lev, Ph.D., and William H. Farrell, Ph.D.  More specifically, she asserts that Drs. Lev and Farrell did not explain their own moderate functional rating as to Plaintiff's attention and concentration in the narrative section of their Mental Residual Functional Capacity Assessment ("MRFCA"), and, because the ALJ failed to incorporate such limitation into the RFC or explain why she rejected it, remand is required.  The undersigned Magistrate Judge finds the ALJ properly accounted for Plaintiff's limitation in maintaining attention and concentration for extended periods.

On June 7, 2018, Dr. Lev reviewed Plaintiff's mental health records and completed an MRFCA, wherein he indicated Plaintiff was moderately limited in her ability to understand, remember, and carry out detailed instructions; to maintain attention and concentration for extended periods; to interact appropriately with the general public; and to respond appropriately to changes in the work setting.[4]  (R. 74-75.)  In the narrative RFC section of his MRFCA, Dr. Lev explained that Plaintiff could: (1) perform simple and some, but not all, complex tasks with routine supervision; (2) relate to supervisors, peers, and the general public on a superficial work basis; and (3) adapt to a work situation.  (R. 75-76.)  Dr. Farrell affirmed these findings.  (R. 95-97.)

An ALJ can account for moderate limitations that a medical source assesses by "limiting the claimant to particular kinds of work activity" in the RFC assessment.  *Smith v. Colvin,* 821 F.3d 1264, 1269 (10th Cir. 2016); *see also Vigil v. Colvin,* 805 F.3d 1199, 1204 (10th Cir. 2015) ("[T]he ALJ accounted for [the claimant's] moderate concentration, persistence, and pace problems in his RFC assessment by limiting him to unskilled work.").  Therefore, asking "how the administrative law judge's assessment incorporates the numerous moderate limitations indicated by [the state agency psychologist] . . . is the wrong question."  *Smith,* 821 F.3d at 1269, n.2. Because the initial functional limitation ratings serve "only as an aid to [the state agency psychologist's] assessment of residual functional capacity," a reviewing court should compare the

---

[4] Drs. Lev and Farrell did not complete the special Form SSA-4734-F4-SUP, which includes a section for rating functional limitations (Section I) and a section for recording the mental RFC determination (Section III).  *See* SSA Program Operations Manual System (POMS), DI 24510.060. Rather, they completed an MRFCA form that prompts the same questions using the same rating system and explains that "[t]he questions below help determine the individual's ability to perform sustained work activities.  However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion."  (Tr. 74.)  The structure of the form Drs. Lev and Farrell completed is essentially the same as special Form SSA-4734-F4-SUP in that both forms prompt the psychological consultant to answer questions that form the basis of the mental RFC assessment contained in the narrative discussion.  Thus, case law referring to "Section I" and "Section III" remains relevant here.

ALJ's findings to the state agency psychologist's "opinion on residual functional capacity, not her notations of moderate limitations." *Id.* Thus, the question is whether the ALJ sufficiently addressed the state agency psychologist's narrative RFC limitations in the RFC assessment. *See, e.g., Lee v. Colvin,* 631 F. App'x 538, 541 (10th Cir. 2015) (unpublished) (holding where the ALJ's RFC assessment "included, essentially verbatim, the limitations from Section III of the MRFCA," the ALJ "was not also required to specifically adopt or discuss each individual limitation described in section I.").

In *Smith,* the Tenth Circuit expressly recognized that an RFC limitation of "simple tasks and work requiring only routine supervision or only superficial interaction with supervisors and peers" accounted for a number of moderate nonexertional limitations identified by the state agency psychologist, including the same moderate limitation in the claimant's ability to "remain attentive and keep concentration for extended periods" at issue here. *Smith,* 821 F.3d at 1268-69. In this case, the ALJ not only found Dr. Lev's and Dr. Farrell's opinions persuasive, but she also adopted their narrative RFC limitations as to social interaction and adaptation essentially verbatim, and ultimately imposed a *more restrictive* skill level by limiting Plaintiff to unskilled work, involving simple and routine tasks. (R. 17, 21.)

Moreover, the ability to maintain attention and concentration for extended periods is not a mental activity required by unskilled work. *See Nelson v. Colvin,* 655 F. App'x 626, 629 (10th Cir. 2016) (unpublished) ("[U]nskilled work does not require . . . the ability to maintain attention and concentration for extended periods, an area in which [the state agency psychologist] noted a moderate limitation."); *see also* SSR 96-9p, 1996 WL 374185, at *9 (July 2, 1996) (noting that the mental activities generally required by unskilled work are understanding, remembering, and carrying out simple instructions; making judgments that are commensurate with the functions of

unskilled work—i.e., simple work-related decisions; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routing work setting).

Although "[t]here may be cases in which an ALJ's limitation to 'unskilled' work does not adequately address a claimant's mental limitations," *Vigil,* 805 F.3d at 1204, the undersigned Magistrate Judge finds here that the ALJ sufficiently accounted for Plaintiff's moderate limitation in maintaining attention and concentration for extended periods when forming the RFC.

### C.   The ALJ Properly Considered the Treating Psychiatrists' Medical Evidence.

Plaintiff contends the ALJ improperly considered the medical evidence provided by her treating psychiatrists[5] at Oklahoma State University Center for Health Sciences ("OSUCHS"), arguing the ALJ ignored notes concerning her subjective complaints and observations that she needed to have questions repeated or required frequent redirection.

On February 28, 2018, Plaintiff presented to OSUCHS psychiatrist Dr. David Ross and reported severe anxiety, obsessive and intrusive thoughts, ritualistic behaviors, and poor concentration from her anxiety. (R. 468.)  Dr. Ross noted, *inter alia,* Plaintiff's mood appeared anxious, her cognition and memory were not impaired, and that she was attentive.  (R. 472.)  He diagnosed Plaintiff with OCD with good or fair insight as well as PTSD.  (R. 472-73.)

Plaintiff followed-up with Dr. Heather Jones, psychiatry resident at OSUCHS, on October

---

[5] In her briefing, Plaintiff complains that the ALJ never indicated that these psychiatrists were mental health professionals and doctors and implies that this caused the ALJ not to evaluate their medical opinions.  (ECF No. 15 at 5; ECF No. 18 at 3.)  First, the ALJ clearly understood the records to be related to Plaintiff's mental health, repeatedly referring to the results of "[m]ental status examination . . . ."  (R. 19 (referencing Exhibits B-6F, B-12F, and 18F).)  Second, the portions of those records Plaintiff references are not "medical opinions" requiring the ALJ's evaluation of their persuasiveness under 20 C.F.R. § 416.920c; that is, they are not "a statement . . . about what [Plaintiff] can still do despite [her] impairment(s) and whether [she] has one or more impairment-related limitations or restrictions" in certain listed abilities.  20 C.F.R. § 416.913(a)(2).  And, in any event, even if these were medical opinions, Plaintiff does not argue these findings are different than the moderate limitations previously found by the state agency psychologists, which were adequately accounted for by the RFC.  *See* Section V(B), *supra*.

3, 2018. (R. 617-23.) As relevant to this appeal, Dr. Jones noted Plaintiff had intact attention in conversation and gave appropriate responses to questions but "(the patientdid [sic] need to have questions repeated or require[d] frequent redirection)." (R. 620.) Dr. Jones diagnosed Plaintiff with OCD with good or fair insight, PTSD, and unspecified anxiety disorder. (R. 621.) At subsequent appointments with Dr. Jones in November 2018 and March 2019, Plaintiff reported that she was doing "much better" and Dr. Jones repeated her findings (typos and all) that Plaintiff had intact attention in conversation and gave appropriate responses to questions but needed questions repeated or required frequent redirection. (R. 627-34, 662-67.) Plaintiff had a similar appointment with Dr. Tiffany Lauren Bartel on July 18, 2019.[6] (R. 686-91.)

Plaintiff asserts the ALJ ignored the portion of Dr. Ross's treatment notes where he recounted her subjective complaints, arguing that such symptoms affect her ability to maintain attention and concentration for extended periods. Although the ALJ did not recite every symptom Plaintiff reported to Dr. Ross, she did discuss Dr. Ross's mental status examination findings and adopted his OCD and PTSD diagnoses as severe impairments. (R. 15, 19 (citing Exhibit B-6F).) The ALJ thus clearly considered Dr. Ross's treatment notes. "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater,* 79 F.3d 1007, 1009-10 (10th Cir. 1996). Moreover, the ALJ concluded that Plaintiff's statements "concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record . . ." (R. 18), and Plaintiff does not contest the ALJ's consistency analysis finding.

Similarly, Plaintiff argues the ALJ ignored the findings of Drs. Jones and Bartel that she needed to have questions repeated or required frequent redirection during her appointments, but

---

[6] Plaintiff refers to Dr. Bartel as "Dr. Tiffany Lauren" and "Dr. Lauren" in her brief. (ECF No. 15 at 10, 12.)

this is not borne out by the record.  In her summary of the evidence, the ALJ specifically discussed Dr. Jones's October 2018 finding that Plaintiff needed to have questions repeated.  (R. 19 (citing Exhibit B-12F, page 4 (R. 620)).)  She then discussed Dr. Jones's November 2018 and March 2019 treatment notes as well as Dr. Bartel's July 2019 treatment note.  (*Id.* (citing Exhibit B-12F, page 11 (R. 627), Exhibit B-15F, pages 9 and 12 (R. 662, 665), Exhibit B-18F, page 5 (R. 689)).)  Here, the ALJ did not recount every instance in the record where Plaintiff was noted to need questions repeated or redirection, but the ALJ nonetheless demonstrated that she considered such finding. (*Id.*)

## VI.     Conclusion and Recommendation

In sum, the ALJ's decision indicates that she considered the entire record and evaluated the evidence in accordance with the appropriate standards.  Accordingly, the undersigned Magistrate Judge **RECOMMENDS** that the Commissioner's decision be **AFFIRMED**.

In accordance with 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b)(2), a party may file specific written objections to this Report and Recommendation.  Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by October 22, 2021.

If specific written objections are timely filed, Rule 72(b)(3) directs the district judge to:

> determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

*See also* 28 U.S.C. § 636(b)(1).  The Tenth Circuit has adopted a "firm waiver rule," which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions."  *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*,

950 F.2d 656, 659 (10th Cir. 1991)).  Only a timely specific objection will preserve an issue for

*de novo* review by the district court or for appellate review.

      **SUBMITTED** this 8th day of October, 2021.


                                  **SUSAN E. HUNTSMAN, MAGISTRATE JUDGE**
                                  **UNITED STATES DISTRICT COURT**